THREADGILL, Judge.
The appellee was charged in a two count information with cheating, in violation of section 817.29, Florida Statutes (1989), and petit theft, in violation of section 812.-014(2)(d), Florida Statutes (1989). The cheating count alleged that the appellee “did unlawfully obtain goods or U.S. currency with the intent to commit a gross fraud or cheat at common law, to wit: did falsely represent that he replaced certain parts during a refrigerator repair for which he received U.S. currency as payment for the parts and labor, said parts not having been replaced....” The trial court granted appellee’s motion to dismiss the cheating count, finding that the cheating statute, section 817.29, had been repealed by implication by sections 812.012 through 812.037, Florida Statutes, the Florida Anti-Fencing Act. The state appealed and we reverse.
In State v. Dunmann, 427 So.2d 166, 168 (Fla.1983), the Florida Supreme Court discussed the test to be used in deciding whether a statute has been repealed by implication, and cited their opinion in State v. Gadsden County, 58 So. 232, 235 (Fla.1912) as follows:
While statutes may be impliedly as well as expressly repealed, yet the enactment of a statute does not operate to repeal by implication prior statutes unless such is clearly the legislative intent. An intent to repeal prior statutes or portions thereof may be made apparent when there is a positive and irreconcilable repugnancy *637 between the provisions of a later enactment and those of prior existing statutes. But the mere fact that a later statute relates to matters covered in whole or in part by a prior statute does not cause the repeal of the older statute. If the two may operate upon the same subject without positive inconsistency or repugnancy in their practical effect and consequences, they should each be given the effect designed for them unless a contrary intent clearly appears.
The appellee, relying on Anglin v. Mayo, 88 So.2d 918 (Fla.1956), argues here and argued below that a positive and manifest inconsistency or repugnancy clearly appears where the identical conduct is condemned under section 817.29 as a third degree felony, and on the other hand under sections 812.012 and 812.014 as a second degree misdemeanor. We disagree.
In United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), the court considered two overlapping sections of the Omnibus Crime Control and Safe Streets Act of 1968. Both sections prohibited the same conduct, but provided for different penalties. In determining that one of the sections had not implicitly repealed the other, the court held that it is “not enough to show that the two statutes produce differing results when applied to the same factual situation.” 442 U.S. at 122.
Likewise, in Fayerweather v. State, 332 So.2d 21 (Fla.1976), the Florida Supreme Court considered whether conduct which violated both the State Credit Card Crime Act, section 817.60(1), (3), Florida Statutes (1973), and the provision making it unlawful to receive stolen property, section 811.-16, Florida Statutes (1973), could be punished under the latter, more severe punishment. The court stated:
It is not unusual for a course of criminal conduct to violate laws that overlap yet vary in their penalties. Multiple sentences are even allowed for conduct arising from the same incident. Traditionally, the legislature has left to the prosecutor’s discretion which violations to prosecute and hence which range of penalties to visit upon the offender.
Id., at 22 (citations omitted).
Also, in State v. Cogswell, 521 So.2d 1081 (Fla.1988), the supreme court found that a statute dealing with bookmaking was not unconstitutionally invalid as viola-tive of due process or equal protection for permitting felony prosecution of the same conduct treated as a misdemeanor by another statute.
Finally, the appellee notes that “[a] general statute covering an entire subject-matter, and manifestly designed to embrace all the regulations of the subject, may supersede a former statute covering a portion only of the subject, when such is the manifest intent_” Dunmann, 427 So.2d at 168 (quoting Sparkman v. State ex rel. Bank of Ybor City, 71 So. 34, 39 (Fla.1916)). We have examined chapter 77-342, Laws of Florida, enacting the Florida Anti-Fencing Act, and its legislative history. The legislative history reveals that sections 812.012 through 812.037 were patterned after the Model Theft and Fencing Act set forth in Blakely and Goldsmith, Criminal Redistribution of Stolen Property: The Need for Law Reform, 74 Michigan Law Review 1512 (1976), which focuses on the receivers of stolen property as the central figures in theft activities. The legislative history also indicates that the legislature, by enacting chapter 77-342, intended to repeal the larceny statute and to provide a greater sentence for the theft of property valued at $20,000 or more. Staff of Senate Judiciary-Criminal Comm., Staff Analysis and Economic Statement SB 14-31, (May 17, 1977). Although the Florida Anti-Fencing Act is an omnibus theft act, see Dunmann, 427 So.2d at 168, we find no indication that the legislature intended the act to repeal or in any way limit the field of' operation of the cheating statute. There is a general presumption that later statutes are passed with knowledge of existing laws and a construction is favored which gives each one a field of operation, rather than have the former statute repealed by implication. Oldham v. Rooks, 361 So.2d 140, 143 (Fla.1978).
*638 Based on the above, we conclude that the Florida Anti-Fencing Act did not implicitly repeal the cheating statute. We therefore reverse the order of the trial court and remand for trial of the appellee under section 817.29.
Reversed and remanded.
SCHOONOVER, A.C.J., and HALL, J., concur.